IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARC ANTHONY SHULL,                    )
                                       )
                Plaintiff,             )
                                       )
                                       )   Case No. CIV-19-172-JFH-KEW
                                       )
COMMISSIONER OF THE SOCIAL             )
SECURITY ADMINISTRATION,               )
                                       )
                Defendant.             )

## REPORT AND RECOMMENDATION

Plaintiff Marc A. Shull (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying his application for
disability benefits under the Social Security Act. Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined he was not disabled. For the reasons discussed below,
it is the recommendation of the undersigned that the Commissioner's
decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social
Security Act "only if his physical or mental impairments are of
such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1]    Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 43 years old at the time of the decision. He has a high school education and worked in the past as a cement truck driver, dump truck driver, rough neck, window assembler, and painter. Claimant alleges an inability to work beginning on September 1, 2015, due to limitations resulting from anxiety, depression, back injury, and left ankle reconstructive surgery.

### Procedural History

On July 18, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were

denied initially and upon reconsideration. On August 21, 2018, ALJ J. Leland Bentley, conducted a hearing from McAlester, Oklahoma, at which Claimant appeared and testified. On October 11, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 9, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to properly evaluate opinions from his treating psychiatrist, Theresa Farrow, M.D.

## Consideration of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of methamphetamine abuse disorder, cannabis use disorder, depressive disorder recurrent with anxious disorder, intermittent explosive disorder vs. PTSD, lumbago, cervical radiculopathy, left ankle reconstruction and femoral acetabula

4

impingement, and obesity. (Tr. 27). Claimant could perform light work with additional limitations. He was able to understand, remember, and apply simple and detailed instructions and to concentrate and persist for extended periods in order to carry out and complete simple and detailed work tasks with routine supervision. He was able to adapt to and respond appropriately to a routine work setting where changes are gradually introduced. Claimant was able to maintain superficial work relationships with others, but he needed to avoid work-related contact with the general public. He was unable to climb ladders, ropes, and scaffolding, but he could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. Claimant was to avoid unprotected heights, dangerous moving machinery, concentrated exposure to dust, fumes, odors, and poorly ventilated areas. (Tr. 29).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of small product assembler, inspector/food packager, and electrical accessories assembler, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 37). As a result, the ALJ concluded Claimant was not under a disability from September 1, 2015, through the date of the decision. (Tr. 37-38).

Claimant contends the ALJ failed to properly evaluate the opinion of his treating psychiatrist, Dr. Farrow. He asserts that when evaluating Dr. Farrow's opinion, the ALJ failed to provide

"good/specific/supported reasons" for rejecting the opinion and failed to properly consider the factors relevant to evaluating medical opinions. Specifically, he contends that the inconsistencies noted by the ALJ in the decision are not supported by the record.

The ALJ summarized Claimant's treatment records from Carl Albert Community Mental Health ("Carl Albert"), including Dr. Farrow's treatment records. Claimant reported some improvement in his moods in July of 2014, after a history of outpatient care from 2008-2012 and a diagnosis of bipolar disorder. The ALJ referenced Claimant's report that he had always been "hyperactive" and "impulsive" and had never "slept well." Claimant reportedly had worked on-and-off during his adult life, but he was laid off prior to his appointment because he was in jail for unpaid traffic fines. (Tr. 31, 458-64). When Claimant visited William Ming, M.D., at Carl Albert in July of 2016, Dr. Ming noted Claimant's mood, appetite, and sleep were stable. (Tr. 434).

Claimant continued to receive treatment through Carl Albert with his moods varying, and he continued medications as recommended. In September of 2017, Claimant reported to Dr. Farrow that he was doing better with fewer mood swings and his anger, depression, anxiety, and sleeping were "a little better." He reportedly was getting dizzy and passing out from his medication. His status was noted as improving. (Tr. 637-39). In January of

6

2018, Claimant reported to Dr. Ming that his mood and appetite were stable, and his medicine was working well. His status was noted as stable. (Tr. 635-36). In March of 2018, he was doing better, except for problems with his ex-wife. He reported less mood swings, anger, depression, and anxiety, but his sleep was "poor," and his appetite was "too big." His status was improving. (Tr. 31, 632-34). Dr. Ming examined Claimant on July 13, 2018, because Claimant was running out of medication. He reported his appetite, mood, and sleep were "good." Claimant stated that his medicine "keeps him stable. I would not be stable without it." (Tr. 630-31). By August of 2018, Claimant continued to do better, except for falling associated with low blood pressure. Dr. Farrow noted his condition was improving. (Tr. 31, 650-52).

The ALJ also summarized Claimant's testimony from the hearing in detail. Claimant attended a small church every Wednesday and Sunday. (Tr. 30, 55-56). He last worked in September of 2015, as a concrete truck driver, at which time he was fired because of absences related to his wife's illness. (Tr. 30, 49). When asked what would keep him from returning to his work as a truck driver, Claimant testified he could not sit for long periods of time. He also felt he could not meet other physical demands of the job. (Tr. 30, 50-51). He reportedly suffered from depression, anxiety, bipolar disorder, ADD, and ADHD, but he was "able to cope" as long as he had his medication. Without his medication, Claimant did not

7

want to be around other people, was depressed, and had issues with anger and rage. He occasionally experienced symptoms on his medication, but they were "not bad." (Tr. 30, 56-57).

When discussing the opinion evidence from Dr. Farrow, the ALJ specifically referenced the medical source statements completed by Dr. Farrow on September 26, 2017, and August 20, 2018. Dr. Farrow determined Claimant would probably miss work three days or more per month because of his impairments and/or symptoms associated with severe depression and anxiety. Claimant sometimes suffered from hallucinations, was paranoid at times, and had severe ADHD with severe problems with attention and concentration. His medications had recently started causing him to experience severe dizziness and passing out. Dr. Farrow noted Claimant was very limited in his ability to perform basic work-related activities on a day-to-day basis in a regular work setting due to his severe anxiety and depression. Claimant's limitations had been present since 2011, when Dr. Farrow began treating him.

Dr. Farrow determined Claimant had no useful ability to function in several areas, including maintaining attention for two-hour segments, maintaining regular attendance and punctuality within customary usually strict tolerance, sustaining an ordinary routine without special supervision, working in coordination with or in proximity to others without being unduly distracted, completing a normal workday or workweek without interruptions from

psychologically based symptoms, performing consistent pace without unreasonable number and length of rest periods, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and dealing with normal work stress. Claimant also would have no useful ability to function with understanding and remembering detailed instructions, carrying out detailed instructions, dealing with stress of semi-skilled or skilled work, traveling in unfamiliar places, or using public transportation. (Tr. 33-34, 583-89, 738-42).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]'" *Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). "That [an] ALJ do[es] not

explicitly discuss all the . . . factors for each of the medical opinions before him does not prevent" meaningful review of his decision. *Oldham*, 509 F.3d at 1258.

In declining to give "controlling weight" to Dr. Farrow's opinion and assigning it "little weight," the ALJ relied upon inconsistencies between Dr. Farrow's opinion and other record evidence. The ALJ acknowledged Dr. Farrow had treated Claimant since 2011, while also pointing out that her opinion that Claimant had no useful ability to complete numerous work-related activities, essentially precluded all work activity. He determined Dr. Farrow's opinion was inconsistent with Claimant's work history, which established Claimant engaged in work activity for "numerous years after 2011 as well as several years above SGA levels at skilled or semi-skilled jobs including as a truck driver requiring a CDL." He relied on Claimant's inconsistent testimony that "he left those job positions due to legal problems or his wife's health and not for mental or physical limitations." He also noted Dr. Farrow's opinions were inconsistent with Claimant's testimony that as long as he takes his medication, he "can cope[.]" The ALJ referenced the inconsistency between Dr. Farrow's finding that Claimant had no useful ability to interact with the general public, as he testified he attended church twice a week. He further relied upon treatment notes from Dr. Ming, which he determined were "incongruent with Dr. Farrow's extreme limitations." He

10

concluded that "[d]ue to the sharp contrast in the records from these two sources, other treating and examining sources, and work activity of the [C]laimant, I decline to give controlling weight to Dr. Farrow's opinion and assign little weight." (Tr. 34).

As set forth herein, the ALJ included a discussion of Claimant's treatment records from Carl Albert, including his treatment with Dr. Farrow. He determined Dr. Farrow's treatment notes did not support the limitations included on the medical source statements she completed. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (noting opinion of treating physician may be reasonably discounted when not supported by his own treatment notes). He also discounted Dr. Farrow's opinions because they were inconsistent with other medical evidence in the record, including the treatment notes of Dr. Ming. *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (noting opinion of treating physician may be discounted by the ALJ when inconsistent with other medical evidence). The ALJ referenced the length and nature of Claimant's treatment relationship with Dr. Farrow. Further, the ALJ determined that Dr. Farrow's opinions, which she indicated dated back to 2011, were inconsistent with Claimant's work history and his own testimony. *See Newbold v. Colvin*, 718 F.3d 1257, 1265-66 (10th Cir. 2013) (finding ALJ's discounting of treating physician's extreme limitations was reasonable based on inconsistencies between the

limitations and claimant's reported activities).[2] This Court finds no error with the ALJ's consideration of Dr. Farrow's opinions.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 27th day of August, 2020.

_Kimberly E. West_

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent the ALJ considered Dr. Farrow's limitations an opinion that Claimant could not work ("Dr. Farrow opined that since 2011, the claimant has no useful ability to complete numerous work related activities, which would clearly preclude all work activity.") (Tr. 34), her opinions were not entitled to controlling weight as they addressed issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) (stating that opinions that a claimant is "disabled" or "unable to work" are not medical opinions); *Balthrop v. Barnhart*, 116 F. App'x 929, 932-33 (10th Cir. 2004) (finding an opinion couched as conclusive on an issue reserved to the Commissioner is not a medical opinion entitled to controlling weight analysis or any special significance).

12